**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sanjay Babulal Gohel, | No. CV 10-0001-PHX-FJM |
| Petitioner, | **ORDER** |
| vs. | |
| Charles L. Ryan and Terry L. Goddard, | |
| Respondents. | |

We have before us petitioner's amended petition under 28 U.S.C. § 2254 for a writ of habeas corpus (doc. 12), memorandum in support of petition (doc. 5), respondents' answer (doc. 15), petitioner's reply (doc. 20), respondents' supplemental answer (doc. 26), and petitioner's supplemental reply (doc. 29). We also have the Report and Recommendation ("R&R") of the United States Magistrate Judge recommending dismissal or denial of petitioner's claims (doc. 32), petitioner's objections (doc. 34), petitioner's supplement to the objections (doc. 35), respondents' response to petitioner's supplement (doc. 36), and petitioner's reply and notice of intent to file (doc. 37).

**I**

Early on July 3, 1997, petitioner's wife, Jaimini Gohel, began backing her car out of the driveway as she was leaving for work. Neighbors heard two loud noises, saw a man running down the street, and saw the car stopped in the front yard across the street from the driveway of petitioner's house. After calling 911 to report the accident, neighbors walked

to the car and saw Jaimini slumped over the driver's seat with the front passenger door open and the car still running. When the first responders arrived, the victim was still alive. Officers removed her from the car and began performing CPR. The fire department arrived and transported the victim to the hospital by helicopter. An officer on the scene noticed a bullet hole in the driver's side windshield. No weapon was found in the car, but the officer found a shell casing from a .380 auto cartridge case behind the driver's seat. A second .380 casing was later found under the driver's seat. There was also a sweater in the back seat and a key and a remote control behind the passenger's seat. It was later determined this remote would unlock the victim's car and the key unlocked and started the ignition of co-indictee Isidro Falcon's car. The victim's purse was on the front passenger's side and appeared undisturbed. There was no indication the car had been broken into. A medical examiner later found two gunshot wounds to the victim's head, one of which was fatal.

The evidence at petitioner's trial showed that he attempted several times to hire someone to kill his wife. Douglas Maurer testified that petitioner asked him in late 1996 whether nitroglycerin would kill someone. In February 1997, he approached Maurer about killing his wife. The two discussed various plans, including hiding in her car and shooting her. Petitioner gave Maurer a gun in May 1997, and the parties talked about paying Maurer to kill petitioner's wife, but Maurer traded the gun for drugs.

Colin Head, an employee at petitioner's store, told the police that petitioner asked him to kill his wife. (Doc. 27, ex. M at 38). William Moore, a sign painter who occasionally worked for petitioner, testified that petitioner asked him in February 1997 about having somebody "disappear." (Doc. 27, ex. K at 27). In December 1997, petitioner approached Moore about having Falcon killed. (Doc. 27, ex. K at 45). Moore also testified that petitioner said he could not have divorced his wife because "he would lose everything if he did." (Doc. 27, ex. K at 37).

Isidro Falcon shopped at petitioner's grocery store and knew petitioner for about eight years before the murder. Approximately three weeks before the murder, petitioner asked Falcon if he would kill petitioner's wife. Falcon declined, but asked his acquaintance

- 2 -

1  Alfonso Munoz, known as El Gato, if he would do it. El Gato agreed to commit the murder
2  for $8,000. Petitioner gave Falcon $2,000 in cash and a .380 chrome pistol with a brown
3  handle. Falcon gave the gun to El Gato that day, along with $1,000. The three men drove
4  to the victim's workplace one day, planning to have the killing occur there, but then petitioner
5  changed his mind and decided he wanted his wife killed in front of his house. On Friday
6  before the murder, the three drove past petitioner's house. Petitioner told the men the time
7  his wife left for work and gave Falcon a remote control to the victim's car, which Falcon gave
8  to El Gato. Three days before the murder, petitioner called Falcon and El Gato to the store
9  so they could see the victim and her car.

**II**

11  Falcon was charged with first degree murder and conspiracy to commit murder. He
12  pled guilty to manslaughter in exchange for testifying against petitioner. El Gato was never
13  found. Petitioner was convicted of first degree murder and conspiracy to commit first degree
14  murder. In 2001, the trial court sentenced petitioner to life in prison without possibility of
15  parole on the murder charge, and life with possibility of parole after 25 years on the
16  conspiracy charge. Petitioner appealed and the Arizona Court of Appeals affirmed his
17  convictions and sentences on March 27, 2003. The Arizona Supreme Court summarily
18  denied review. Petitioner's notice of postconviction relief ("PCR") was due by December 31,
19  2003. After seeking leave to file a delayed notice, petitioner filed a PCR petition on May 13,
20  2005. The court denied his ineffective assistance of counsel claim and deferred ruling on the
21  remaining claims. Petitioner filed an amended memorandum, arguing that he had newly
22  discovered evidence. He claimed that crime scene investigators had determined the murder
23  could not have occurred the way Falcon said El Gato related it to him. The court dismissed
24  this petition on October 24, 2007. The Arizona Court of Appeals summarily denied review
25  on September 26, 2008 and the Arizona Supreme Court summarily denied review on March
26  17, 2009. Petitioner filed a petition in this court on January 4, 2010 and an amended petition
27  on March 3, 2010.

28  Petitioner raises seven grounds for relief in his amended petition: (1) the applicable

- 3 -

1    sentencing statute was unconstitutionally vague; (2) the judge, rather than the jury, found an
2    aggravating factor in violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348
3    (2000); (3) the use of uncertified, "rapid" transcripts violated his due process and equal
4    protection rights; (4) hearsay admitted at trial violated his rights to confrontation, due
5    process, and a fair trial; (5) newly discovered evidence shows petitioner is actually innocent;
6    (6) ineffective assistance of counsel; and (7) omitted records on direct appeal violated his due
7    process and equal protection rights. The magistrate judge recommended dismissal of some
8    claims and denial of the remainder of petitioner's petition. (Doc. 32).

9    A writ of habeas corpus will not be granted with respect to any claim fully adjudicated
10   on the merits in state court unless the state court proceedings "resulted in a decision that was
11   contrary to, or involved an unreasonable application of, clearly established Federal law, as
12   determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Clearly
13   established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme]
14   Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529
15   U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000).

### III

17   The magistrate judge concluded that several of petitioner's claims were not properly
18   exhausted and are now procedurally defaulted. We may usually consider a state prisoner's
19   claim only if it was properly exhausted in state court. 28 U.S.C. § 2254(b)(1)(A), (c);
20   Duckworth v. Serrano, 454 U.S. 1, 3, 102 S. Ct. 18, 19 (1981). To exhaust, a claim must be
21   fairly presented in the proper forum. Since petitioner received a life sentence, his claims are
22   exhausted for purposes of federal habeas relief once presented to the Arizona Court of
23   Appeals. Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Crowell v. Knowles, 483
24   F. Supp. 2d 925, 933 (D. Ariz. 2007). A claim is fairly presented if the petitioner describes
25   both the operative facts and the federal legal theory upon which the claim is based. Kelly v.
26   Small, 315 F.3d 1063, 1066 (9th Cir. 2003), overruled on other grounds by Robbins v. Carey,
27   481 F.3d 1143 (9th Cir. 2007). The petitioner must have "characterized the claims he raised
28   in state proceedings *specifically* as federal claims." Lyons v. Crawford, 232 F.3d 666, 670

- 4 -

1  (9th Cir. 2000), modified, 247 F.3d 904 (9th Cir. 2001).  "To exhaust his claim, [petitioner]
2  must have presented his federal, constitutional issue before the Arizona Court of Appeals
3  within the four corners of his appellate briefing."  Castillo v. McFadden, 370 F.3d 882, 887
4  (9th Cir. 2004), amended and superseded by 399 F.3d 992 (9th Cir. 2005).

5      "[W]here a petitioner did not properly exhaust state remedies and 'the court to which
6  the petitioner would be required to present his claims in order to meet the exhaustion
7  requirement would now find the claims procedurally barred,' the petitioner's claim is
8  procedurally defaulted."  Smith v. Baldwin, 510 F.3d 1127, 1139 (9th Cir. 2007) (quoting
9  Coleman v. Thompson, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 2557 n.1 (1991)).  We may
10 not reach the merits of procedurally defaulted claims unless a petitioner makes a showing of
11 cause and prejudice or the failure to hear the claims would constitute a miscarriage of justice.
12 Sawyer v. Whitley, 505 U.S. 333, 338-39, 112 S. Ct. 2514, 2518-19 (1992).

13     "A prisoner may obtain federal review of a defaulted claim by showing cause for the
14 default and prejudice from a violation of federal law."  Martinez v. Ryan, 566 U.S. __, 132
15 S. Ct. 1309, 1316 (2012).  "Cause" requires a showing of "some objective factor" which
16 impeded compliance with a procedural rule, such as "a showing that the factual or legal basis
17 for a claim was not reasonably available to counsel."  Murray v. Carrier, 477 U.S. 478, 488,
18 106 S. Ct. 2639, 2645 (1986).  Prejudice requires "showing, not merely that the errors at his
19 trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial
20 disadvantage, infecting his entire trial with error of constitutional dimensions."  United
21 States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596 (1982).

22     The magistrate judge concluded that four of petitioner's claims were unexhausted and
23 procedurally defaulted.  Direct appeal is no longer available for these claims.  See Rule 31.3,
24 Ariz. R. Crim. P.  A subsequent PCR petition is also unavailable.  Petitioner's claims would
25 be barred by Rule 32.4(a), Ariz. R. Crim. P., which requires a petition for post-conviction
26 relief to be filed within 90 days after entry of judgment and sentence or within 30 days after
27 issuance of the order and mandate in the direct appeal.  Another PCR claim would also be
28 barred by Rule 32.2(a)(3), Ariz. R. Crim. P., under which a defendant is precluded from

1 relief based upon any ground that has been waived at trial, on appeal, or in any previous 2 collateral proceeding. A claim may be waived if the defendant did not raise the error at trial, 3 on appeal, or in a previous collateral proceeding. See Stewart v. Smith, 202 Ariz. 446, 46 4 P.3d 1067 (2002). None of the exceptions listed in Rule 32.2(b) apply. (Doc. 32 at 52-54). 5 Petitioner failed to exhaust certain claims and is now procedurally barred from doing so. 6 Therefore, we agree with the magistrate judge's conclusion that petitioner's equal protection 7 claim in ground 3 and the claims in grounds 4 and 7 are procedurally defaulted. Absent a 8 showing of actual innocence or cause and prejudice, these claims must be dismissed with 9 prejudice.

10 First, petitioner claims his right to equal protection was violated by the use of 11 uncertified, "rapid" transcripts. Petitioner contends that he properly presented an equal 12 protection claim on direct appeal by quoting Matter of Hendrix, 145 Ariz. 345, 349, 701 P.2d 13 841, 845 (1985), which cited Griffin v. Illinois, 351 U.S. 12, 76 S. Ct. 585 (1956). (Doc. 4, 14 ex. 1 at 12). While a citation to a state case analyzing the legal standard for a federal 15 constitutional violation can establish exhaustion, Castillo v. McFadden, 399 F.3d 993, 999 16 (9th Cir. 2005), it does not do so here.

17 In Griffin, the Supreme Court found the due process and equal protection clauses had 18 been violated by the state's denial of appellate review where petitioners could not afford a 19 transcript of trial proceedings. In this case, violation of due process was petitioner's only 20 federally based challenge to the use of rapid transcripts. ("The specific constitutional 21 problems with rule 4.17 are that it violates a defendant's right to due process under the 22 Arizona (art. 2, sec. 4) and Federal (5th and 14th amendments) Constitution." (Doc. 4, ex. 23 1 at 13)). His citation to Hendrix gave no notice that it was meant to support an equal 24 protection claim. In addition, the cited language did not analyze the federal constitutional 25 issues; it merely quoted the record below. This citation did not fairly present the equal 26 protection claim because it did not describe the federal legal theory on which the claim was 27 based.

28 Second, petitioner contends that Falcon repeated an out-of-court statement by El Gato

- 6 -

1 during trial. Petitioner moved for a mistrial on the grounds of hearsay, but his motion was
2 denied. He claims to have raised this argument on direct appeal as a violation of his Sixth
3 and Fourteenth Amendment rights to confrontation, due process, and a fair trial. But
4 petitioner's opening brief in the Arizona Court of Appeals makes no mention of federal
5 constitutional rights. Instead, it claims only that a mistrial should have been granted. (Doc.
6 15, ex. C at 8-10). Petitioner did not fairly present his hearsay claim under the Sixth and
7 Fourteenth Amendments to the state courts.

8 Finally, petitioner admits that his claim based on the omitted transcript was not
9 exhausted. (Doc. 20 at 29). We previously denied a motion to stay and abey to allow
10 petitioner to return to state court to exhaust this claim. We noted that, "[e]ven if petitioner's
11 claims were not procedurally defaulted, he would not be entitled to a stay because his claims
12 are meritless." (Doc. 30 at 3).

13 These claims are unexhausted and procedurally barred. Petitioner has not shown
14 cause for failing to present his federal claims on appeal or in state PCR proceedings. Nor has
15 he shown that "actual harm result[ed] from the alleged error." Vickers v. Stewart, 144 F.3d
16 613, 617 (9th Cir. 1998). He has also not shown that failure to consider these claims will
17 result in a fundamental miscarriage of justice. His claim based on actual innocence will be
18 addressed below, as we must "first address all non-defaulted claims for comparable relief and
19 other grounds for cause to excuse the procedural default" before we address the claim of
20 actual innocence. Dretke v. Haley, 541 U.S. 386, 393-94, 124 S. Ct. 1847, 1852 (2004).
21 Accordingly, we deny relief based on these procedurally defaulted claims and move to
22 petitioner's non-defaulted claims.

23 **IV**

24 **A. Vagueness**

25 Petitioner contends that A.R.S. § 13-703, under which he received a natural life
26 sentence, violated his due process rights because it was unconstitutionally vague. First, he
27 claims the statute provides no standards for the court to determine whether to impose a
28 sentence of natural life or life with the possibility of parole. Second, he contends that it

1 allows for arbitrary application. Relying on State v. Wagner, 194 Ariz. 310, 313, 982 P.2d
2 270, 273 (1999), the state court concluded that because there is no right to guidelines in a
3 non-capital sentencing proceeding, the lack of standards for choosing between life with
4 parole and life without does not violate due process.

5   A state court decision is contrary to clearly established Supreme Court precedent "if
6 the state court applies a rule that contradicts the governing law set forth in [Supreme Court]
7 cases' or 'if the state court confronts a set of facts that are materially indistinguishable from
8 a decision of [the Supreme] Court and nevertheless arrives at a result different from [its]
9 precedent.'" Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166 (2003). The state court here
10 did not apply a rule that contradicted Supreme Court law or arrived at a different result than
11 a case with materially indistinguishable facts.

12   The Supreme Court has not extended Furman v. Georgia, 408 U.S. 238, 92 S. Ct. 2726
13 (1972) to non-capital sentencing. No Supreme Court decision has held that due process is
14 violated by a lack of standards in non-capital sentencing. The state court decision was not
15 contrary to clearly established federal law.

16   Nor was the decision of the state court an unreasonable application of clearly
17 established Supreme Court precedent. Federal law is unreasonably applied if the state court's
18 decision "either (1) correctly identifies the governing rule but then applies it to a new set of
19 facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly
20 established legal principle to a new context in a way that is objectively unreasonable."
21 Anthony v. Cambra, 236 F.3d 568, 578 (9th Cir. 2000). The court's decision did not result
22 in an unreasonable application of clearly established federal law. There is nothing
23 unreasonable about distinguishing death penalty cases from non-death penalty cases.

24   While it is true that the fair notice component of the void for vagueness argument is
25 not implicated here, petitioner has not shown that any Supreme Court decision holds that the
26 vagueness doctrine requires states to provide explicit guidelines for sentencing. Petitioner
27 is not entitled to relief on this ground.

28

## B. <u>Apprendi</u>

Petitioner claims that his right to a jury trial was violated because a jury did not find an aggravating factor that supported his natural life sentence, in violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S. Ct. 2348 (2000). "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id.</u> at 490, 120 S. Ct. at 2362-63. But the trial judge's sentence of natural life did not increase the penalty beyond the prescribed statutory maximum. Nor did the court have to find an aggravating factor to support a sentence of life without parole.

The applicable statute provides:

> A. A person guilty of first degree murder as defined in § 13-1105 shall suffer death or imprisonment in the custody of the state department of corrections for life as determined and in accordance with the procedures provided in subsections B through G of this section. If the court imposes a life sentence, the court may order that the defendant not be released on any basis for the remainder of the defendant's natural life. An order sentencing the defendant to natural life is not subject to commutation or parole, work furlough or work release. If the court does not sentence the defendant to natural life, the defendant shall not be released on any basis until the completion of the service of twenty-five calendar years if the victim was fifteen or more years of age and thirty-five years if the victim was under fifteen years of age.
> . . .
> E. In determining whether to impose a sentence of death or life imprisonment, the court shall take into account the aggravating and mitigating circumstances included in subsections F and G of this section and shall impose a sentence of death if the court finds one or more of the aggravating circumstances enumerated in subsection F of this section and that there are no mitigating circumstances sufficiently substantial to call for leniency.

A.R.S. § 13-703 (1999).

The maximum penalty for first degree murder was death and the judge was required to make a finding of fact on aggravating factors only to impose a sentence of death. Once the court decided not to impose the death penalty, the court had discretion to impose a sentence of natural life or life with possibility of parole. No fact finding was required. It is permissible "for judges to exercise discretion – taking into consideration various factors relating both to offense and offender – in imposing a judgment *within the range* prescribed by statute." <u>Apprendi</u>, 530 U.S. at 481, 120 S. Ct. at 2358. The judge imposed a sentence within the statutory range, exercising his discretion to sentence petitioner to natural life rather

than life with the possibility of parole. Because the court did not violate Apprendi, petitioner's claim is without merit.

## C. Rapid Transcripts

Petitioner contends his due process rights were violated by not having certified transcripts on appeal. "[A] court reporter's failure to record all proceedings verbatim does not necessarily require reversal." United States v. Wilson, 16 F.3d 1027, 1031 (9th Cir. 1994); see also Mayer v. City of Chicago, 404 U.S. 189, 198, 92 S. Ct. 410, 416 (1971) (an appellant "is not automatically entitled to a full verbatim transcript"). When a portion of the trial transcript has been lost or is inaccurate, "the defendant must demonstrate 'specific prejudice' resulting therefrom" to be granted relief. Wilson, 16 F.3d at 1031. Petitioner did not establish specific prejudice here. He identified several typographical errors in the transcript, but we agree with the magistrate judge that the true meaning of the passages is evident and they do not have any relevance to petitioner's available defenses or current claims. Petitioner's due process rights were not violated by the use of rapid transcripts because he has failed to demonstrate specific prejudice.

## D. Ineffective Assistance

Defendant alleges that he was denied the effective assistance of counsel at trial. To be entitled to relief on this ground, defendant must show that his counsel's performance was deficient and this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Deficiency is established by showing that "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." Id. at 688, 104 S. Ct. at 2064-65. To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." United States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1986).

Petitioner claims his trial counsel failed to adequately investigate the case and failed

1 to discover a missing transcript on direct appeal. Petitioner's ineffective assistance of counsel 2 claim was denied by the PCR court for being untimely under Rule 32.4, Ariz. R. Crim. P. 3 The court of appeals and supreme court summarily denied review.

4 Federal courts "will not review a question of federal law decided by a state court if 5 the decision of that court rests on a state law ground that is independent of the federal 6 question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 7 111 S. Ct. 2546, 2553 (1991). While petitioner argues that Rule 32.4's time bar is 8 inconsistently applied and discretionary, "[t]here is no dispute that Arizona's procedural bar 9 on successive petitions is an independent and adequate state ground." Martinez v. Ryan, 566 10 U.S. __, 132 S. Ct. 1309, 1316 (2012). The magistrate judge found that federal habeas relief 11 was barred because it was disposed of on an independent and adequate state ground and 12 petitioner had not shown cause and prejudice to excuse his default.

13 After the magistrate judge issued his R&R, the United States Supreme Court decided 14 Martinez v. Ryan, supra. The Court previously held in Coleman that a lawyer's ignorance 15 or inadvertence in a postconviction proceeding did not qualify as cause to excuse a 16 procedural default. 501 U.S. at 753, 111 S. Ct. at 2566-67. Martinez creates a "narrow 17 exception" to this rule. 566 U.S. at ___, 132 S. Ct. at 1315. "Inadequate assistance of 18 counsel at initial-review collateral proceedings may establish cause for a prisoner's 19 procedural default of a claim of ineffective assistance at trial." Id.

20 Petitioner contends that, pursuant to Martinez, he has shown cause to excuse the 21 default of his ineffective assistance of counsel claim by establishing that his PCR counsel 22 was ineffective for failing to timely file this claim. Respondents contend that this case differs 23 from Martinez because petitioner did not present a claim of ineffective assistance of PCR 24 counsel to the state courts. Therefore, unlike Martinez, he failed to exhaust.

25 Even considering this ground for relief on the merits, petitioner fails to meet the 26 Strickland standard. See Martinez, 566 U.S. at __, 132 S. Ct. at 1320 (procedural default 27 does not bar us from hearing a substantial claim of ineffective assistance at trial if counsel 28 in the initial-review collateral proceeding was ineffective). The failure to discover the

missing transcript and other records did not prejudice petitioner. We previously found this claim to be "meritless." (Doc. 30 at 3). He has not shown that his appeal would have had a different outcome if counsel had noticed the missing records.

There is also no prejudice from the purported failure to fully investigate the case and discover the evidence petitioner uses to support his claim of newly discovered evidence. The magistrate judge concluded that, "even with Petitioner's new evidence, [he could not] find it more likely than not that no reasonable juror could have found Petitioner guilty beyond a reasonable doubt." (Doc. 32 at 81). Petitioner did not suffer prejudice from his trial counsel's failure to discover the evidence, as there is no reasonable probability that the result of his trial would have been different. He tells the court that he intends to file a memorandum in support of his ineffective assistance of trial counsel claim, but we have already considered this claim on the merits. Any more briefing on the issue would be futile. Habeas relief is not warranted on the grounds of ineffective assistance of trial counsel.

V

Finally, we consider petitioner's contention that he merits relief on grounds of actual innocence. He claims that newly discovered evidence would have changed the verdict and, as a result, he is being held in custody in violation of the Fourteenth Amendment. There is no Supreme Court precedent clearly establishing a freestanding federal constitutional claim of actual innocence. Actual innocence can be a gateway for consideration of other claims, however, when a procedural default would result in a "fundamental miscarriage of justice." Murray v. Carrier, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649 (1986). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Id.

"[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37, 126 S. Ct. 2064, 2076-77 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 867

1  (1995)). A Schlup gateway claim requires new reliable evidence that was not presented at
2  trial. But we must consider all the evidence – "old and new, incriminating and exculpatory."
3  Id. at 538, 126 S. Ct. at 2077. We must assess the likely impact of the evidence on
4  reasonable jurors applying the standard of reasonable doubt.

5  The evidence petitioner relies upon resulted from examination of the victim's vehicle
6  by a criminal reconstructionist, forensic scientist, and forensic consultant. They concluded
7  that it was not possible for the killer to conceal himself in the back seat or leave the vehicle
8  from the back seat through the front passenger door without creating blood smears. Since
9  there were no blood smears, petitioner claims the murder could not have happened as Falcon
10 said Munoz described it. Here, the magistrate judge concluded, and we agree, that it is not
11 more likely than not that no reasonable juror would have convicted petitioner in light of the
12 new evidence. Even if petitioner's recent forensic investigation had been conducted before
13 trial and used to impeach Falcon, there was substantial evidence besides his testimony that
14 petitioner had obtained the death of his wife.

15 In this case, our refusal to hear petitioner's defaulted claims is not a miscarriage of
16 justice. The alleged constitutional violation has not resulted in the conviction of one who is
17 actually innocent. The proposed new evidence, when considered with all of the other
18 evidence in this case, does not make it more likely than not that no reasonable juror would
19 have found petitioner guilty beyond a reasonable doubt.

## VI

21 We must issue or deny a certificate of appealability when we issue an order adverse
22 to the petitioner. Under 28 U.S.C. § 2253(c)(2), the standard for issuing a certificate of
23 appealability is whether the petitioner "has made a substantial showing of the denial of a
24 constitutional right." For claims rejected on the merits, the "petitioner must demonstrate that
25 reasonable jurists would find the district court's assessment of the constitutional claims
26 debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000).
27 For claims denied on procedural grounds, a certificate of appealability "should issue when
28 the prisoner shows, at least, that jurists of reason would find it debatable whether the petition

states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Petitioner has not met either standard.

**IT IS THEREFORE ORDERED** accepting the recommendation of the magistrate judge (doc. 32).

**IT IS ORDERED DISMISSING** with prejudice the equal protection claim in ground 3 and the claims in grounds 4, 5, 6, and 7 of the petitioner's amended petition for relief pursuant to 28 U.S.C. § 2254 (doc. 12).

**IT IS FURTHER ORDERED DENYING** the remainder of the amended petition.

**IT IS FURTHER ORDERED DENYING** a certificate of appealability.

DATED this 19th day of April, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge